## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

JEREMIAH R. TENO                                    CIVIL ACTION NO. 22-0775

                                                   SECTION P

VS.

                                                   JUDGE DAVID C. JOSEPH

CHRIS STINSON, ET AL.                              MAG. JUDGE KAYLA D. MCCLUSKY

### REPORT AND RECOMMENDATION

Plaintiff Jeremiah R. Teno, a prisoner at Madison Parish Correctional Center ("MPCC")

proceeding pro se and in forma pauperis, filed this proceeding on approximately March 22, 2022,

under 42 U.S.C. § 1983. He names the following defendants in their individual and official

capacities: Warden Chris Stinson, Secretary James LeBlanc, and the staff of MPCC.[1]

For reasons below, the Court should retain Plaintiff's equal protection and First

Amendment free exercise claims against Warden Stinson. The Court should dismiss Plaintiff's

claims on behalf of other inmates, request for a transfer, claim that Warden Chris Stinson

threatened him, claims against MPCC staff and Secretary James LeBlanc, claim that defendants

caused him health complications, claim that he was charged medical fees, claims that his due

process and free speech rights were violated, and claims concerning conditions of confinement.

### Background

Plaintiff, a Muslim, alleges that he was served pork or pork byproducts at MPCC, which

violated his right to practice his religion. [doc. # 5, p. 4]. He alleges that Warden Stinson

"knowingly" served pork to Muslim inmates. [doc. # 20, p. 1].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff arrived at MPCC in July 2021.  [doc. # 5, p. 4].  He suggests that, as of March 2022, he was no longer served pork, alleging that "the entire food menu was switched . . . to adhere to the complaints from the Muslim Community . . . ."  [doc. # 5, p. 5].  He claims, however, that "there have been occasions since then where Muslims" were possibly served food that was prepared in the same pots and pans—or with the same utensils—used to prepare pork products for non-Muslim inmates.  *Id.*  He is "afraid to eat the meat because he fears that it may contain pork or pork byproducts . . . ."  *Id.* at 6.

Plaintiff was transferred away from MPCC on or before May 4, 2022.  [doc. # 9].  However, Plaintiff was transferred back to MPCC on July 28, 2022.  [doc. # 16].

In an amended pleading, Plaintiff suggests that pork is still being served to Muslim offenders.  [doc. # 20, pp. 1-2].

Plaintiff also claims that the Muslim prisoner community "has not had a 'reasonable opportunity' to attend services or meet with a religious leader."  [doc. # 5, p. 5].  He adds: "Due to Covid-19, [he] is aware that religious services that are led by an outside (non-prisoner) religious leader will have [] restrictions, however, the Muslim Community does not need an outside Imam to conduct Jummah on Fridays for one hour."  *Id.* at 5.  He states that preventing Muslims from congregating is not reasonably related to a penological interest because congregating poses no "real security threat."  *Id.*  Aside from personal prayer, he did not have any alternative means by which to exercise his faith.  [doc. # 20, p. 2].

Plaintiff alleges that Muslims are not treated equally to similarly situated Christians at MPCC.  [doc. # 5, p. 6].  Christians are "at times" allowed to "attend congregation" or church. [doc. #s 5, p. 6; 20, p. 1].

Plaintiff claims that in March 2022, Warden Chris Stinson threatened to "find a way to take good-time credits from" him if he continued to file grievances. *Id.* at 4, 6.

Tentatively faulting Warden Stinson, Plaintiff also claims in an amended pleading: "not allowing religious material such as Qur'an and other religious documents. [sic]." [doc. # 20, p. 1].

Plaintiff claims for the first time in an amended pleading, "Defendant denied offender an entire meal every weekend for an extended period of time causing weight loss and burdens. [sic]." *Id.* at 2. He was "only fed two meals on weekends [and was] not given any substitute." *Id.*

Plaintiff seeks compensation for "medical issues and dietary complications," punitive damages, and a transfer. [doc. #s 5, p. 7; 20, p. 2]. He also asks the Court to reprimand the administration and staff at MPCC. [doc. # 5, p. 7].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly,* 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of

4

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Transfer**

Plaintiff asks the Court to transfer him to a different facility. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*,

217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

**3. Threats**

Plaintiff claims that in March 2022, Warden Chris Stinson threatened to "find a way to take good-time credits from" him if he continued to file grievances. [doc. # 5, pp. 4, 6].

Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. "[M]ere allegations of verbal abuse or epithets, reprehensible though they may be, do not amount to a cognizable constitutional violation under Section 1983." *Matthews v. LeBlanc*, 2022 WL 2951759, at *1 (5th Cir. July 26, 2022).

Plaintiff does not state a claim of constitutional dimension. The Court should dismiss

this claim.

### 4. Standing

Plaintiff lacks standing to seek relief on behalf of other Muslim inmates.

Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); *see Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[3]

In addition, Plaintiff may not function as counsel for other prisoners. *See, e.g.*, *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; a non-lawyer cannot represent them. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (*citing Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

---

[3] *See also Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

Here, the Court will consider only the alleged harm that Plaintiff suffered. Accordingly, the Court should dismiss claims Plaintiff raises on behalf of other Muslim inmates.

**5. MPCC Staff**

Plaintiff names MPCC staff as a defendant.

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. MPCC Staff does not qualify as a juridical person.[4] Accordingly, the Court should dismiss Plaintiff's claims against this defendant.

If by "staff" Plaintiff refers not to a singular entity but to individuals other than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Accordingly, to the extent Plaintiff names "staff" as unidentified persons, the Court

---

[4] *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991); *Henderson v. Mid States Servs., Inc*., 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

should dismiss Plaintiff's claims against them.

### 6. Conclusory Claims

Plaintiff claims without elaborating that defendants have caused him "health complications[.]"  [doc. # 20, p. 1].  He alleges that he was "charged with medical fees for stomach medications related to stomach complications."  *Id.* at 2.  He also alleges without explanation that LeBlanc and Stinson violated his rights to due process and free speech.  *Id.* at 1.

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Ashcroft*, 556 U.S. at 662.

Here, even construed liberally and in Plaintiff's favor, these claims are vague and conclusory.  He does not disclose enough pertinent facts to state plausible claims.

Moreover, Plaintiff does not join his allegation that he was charged medical fees to any plausible claim or explain how his payment of medical costs violated federal law or his constitutional rights.  "There is . . . no general constitutional right to free health care[,]" and "[c]harging inmates for medical care, furthermore, is not per se unconstitutional." *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001) (*cited with approval by Morris v. Livingston*, 739 F.3d 740, 749 (5th Cir. 2014) (reasoning that the plaintiff did not plead "facts to show that the health care services fee" he paid acted "as a functional denial of medical care . . . .")). "Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim." *Farrakhan v. Johnson*, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) (*cited with approval by Morris*, 739 F.3d at 748).

Here, Plaintiff does not claim that he was refused care because he could not pay; rather, he simply claims that he was charged.

The Court should dismiss these claims.

### 7. Secretary James LeBlanc

In total, Plaintiff alleges that Secretary James Leblanc: "caused numerous violations and infractions to [Plaintiff's] due process rights of religious beliefs, freedom of speech and health complications and financial burdens; such as purchase of medication and having to buy food. [sic]."  [doc. # 20, p. 1].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).  "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that LeBlanc affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between LeBlanc's conduct and any alleged constitutional violation.[5]  Instead, Plaintiff pleads vicarious

---

[5] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the

liability at best, essentially faulting LeBlanc for the alleged actions of Warden Stinson and naming LeBlanc as a defendant solely because of his position or title.  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Plaintiff does not allege that LeBlanc implemented an unconstitutional policy, practice, custom, or procedure that deprived him of any constitutional right.

Accordingly, the Court should dismiss Plaintiff's claims against LeBlanc.[6]

## 8. Conditions of Confinement

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care."  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)).  To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the denial of "the minimal civilized measure of life's necessities."[7]  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  To establish

---

constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[6] *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (opining, where a plaintiff "named the supervisory officials as defendants and alleged generally that they failed in their responsibilities as department heads[,]"  that the plaintiff "failed to allege any particular defendant's personal involvement in conduct that caused constitutional deprivation" and failed to allege "that any of the defendants implemented an unconstitutional policy causally related to his injury."); *Taylor v. LeBlanc*, 851 F. App'x 502 (5th Cir. 2021).

[7] The deprivation alleged must be, objectively, sufficiently serious.  *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S.

deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[8]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff alleges for the first time in an amended pleading that Warden Stinson denied him "an entire meal every weekend for an extended period of time causing weight loss and burdens. [sic]."  [doc. # 20, p. 2].  He weaves this singular allegation among his other unrelated allegations that he was charged medical fees and lacked alternative means of exercising his faith.  Later, woven among his First Amendment allegations, he adds that he "was only fed two meals on weekends [and was] not given any substitute." *Id.*  Finally, he claims that when pork was removed from meals, he did not receive a substitute meat. *Id.* at 1.

---

97, 102 (1976) (quotation marks and quoted source omitted).

[8] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

Plaintiff's terse, fragmented allegations do not reveal that he was deprived of an identifiable human need. He does not plausibly allege, for instance, that he was deprived of adequate nutrition. Moreover, the allegations do not suggest that Plaintiff was exposed to a substantial risk of serious harm. The Court should dismiss these claims.

## 9. Equal Protection

Plaintiff alleges that Warden Stinson does not allow Muslim inmates to congregate at MPCC. [doc. #s 5, p. 4; 20, p. 1]. The "Muslim Community has not had a 'reasonable opportunity' to attend services or meet with a religious leader." [doc. # 5, p. 1]. Plaintiff suggests similarly that he has been denied "Jummah" services on Fridays for one hour. *Id.* He maintains that congregating does not pose a security threat and that disallowing congregating is not reasonably related to a penological purpose. *Id.*

Plaintiff claims that MPCC "gives special benefits to members of the Christian Community by, at times, allowing them to attend congregation." *Id.* at 6. Christian offenders are allowed to "'have church." [doc. # 20, p. 1]. Plaintiff argues that "Muslims should be treated the same as 'similarly situated' inmates . . . ." [doc. # 1, p. 6].

To prevail on an equal protection claim, a plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007) (internal quotation marks and quoted sources omitted). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). "However, the Fourteenth Amendment does not demand that every religious sect or group within a prison—however few in numbers—must have identical facilities or personnel."

13

*Id.* "Rather, prison officials must afford prisoners reasonable opportunities . . . to exercise the religious freedom guaranteed by the First and Fourteenth Amendment[s]." *Id.*

Here, construing Plaintiff's allegations liberally and in his favor, he states a plausible equal protection claim against Warden Stinson. The Court should retain this claim.

**10. First Amendment**

Plaintiff claims that as of July 2021, Muslim prisoners were served pork. [doc. # 1, p. 5]. "Sometime in March of 2022, the entire food menu was switched." *Id.* at 5. Plaintiff suggests that by "switched," he means that pork was no longer served or was not served as often. *Id.* That said, Plaintiff later claims that Warden Stinson "deliberately lied about the pork Muslims have been eating." *Id.* at 6. Plaintiff "is afraid to eat the meat because he fears that it may contain pork or pork by-products . . . ." *Id.* Plaintiff attaches a food label, which he maintains proves "that the food being served contains pork." [doc. #s 5, p. 6; 5-1].

In an amended pleading, Plaintiff appears to allege with more certainty that he was and is being served pork. He alleges that Warden Stinson "knowingly" served Muslim offenders pork[,] that defendant "falsely claimed no pork was being served[,]" that pork was "continuously serv[ed]" to Muslim inmates, that Warden Stinson "blatantly lied directly to" Plaintiff when he said that "no pork was being served[,]" that the warden "allowed staff to serve" pork, and that there were "instances when pork was served during" Ramadhan. [doc. # 20, pp. 1-2].

Plaintiff also claims that Warden Stinson further burdened his right to practice his religion by (1) refusing to allow Muslim inmates to congregate and (2) disallowing "religious material such as [the] Qur'an and other religious documents." [doc. #s 5, p. 4; 20, p. 1].

Plaintiff maintains: (1) that congregating does not pose a security threat; (2) that forbidding congregations is not reasonably related to a penological interest; (3) that he has a

sincere religious belief; (4) that his right to exercise his religion is burdened; and (5) that he has "no alternate means of exercising his faith besides personal prayer[.]"  [doc. #s 1, pp. 4, 6; 20, pp. 1-2].

"Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is reasonably related to legitimate penological interests." *Butts v. Martin*, 877 F.3d 571, 584–85 (5th Cir. 2017) (internal quotation marks and quoted sources omitted).  Courts consider four factors: "(1) [W]hether a valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it, (2) whether there exist alternative means of exercising the fundamental right that remain open to prison inmates, (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally, and (4) whether there is an absence of ready alternatives to the regulation in question." *Id.*  "The same standard applies to challenges based on prison authorities' actions as prison regulations." *Id.*  "[P]rison officials are entitled to 'substantial deference' in the exercise of their professional judgment." *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019) (*quoting Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

Here, construing Plaintiff's allegations liberally and in his favor, the Court should retain these First Amendment claims.[9]

---

[9] The undersigned is cognizant of the Fifth Circuit's statement that "prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007).  The court in *Baranowski*, however, did not establish a categorical bar on First Amendment claims concerning particularized religious dietary requests. *Baranowski* analyzed the *Turner* factors, and it cited *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988), which also considered the *Turner* factors.  *Turner* requires courts to analyze the governmental interest a defendant "put[s] forward" to justify the defendant's actions. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In other words, a court may not (absent some other impediment) by rote dismiss claims that a state actor did not respond to religious dietary requests *before the*

## <u>Recommendation</u>

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Jeremiah R. Teno's claims on behalf of other inmates be **DISMISSED WITHOUT PREJUDICE** for lack of standing and as frivolous.

**IT IS FURTHER RECOMMENDED** that the following be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted: Plaintiff's request for a transfer, claim that Warden Chris Stinson threatened him, claims against MPCC staff and Secretary James LeBlanc, claim that defendants caused him health complications, claim that he was charged medical fees, claims that his due process and free speech rights were violated, and conditions of confinement claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

---

court obtains and analyzes the defendant's governmental interest.

In Chambers, Monroe, Louisiana, this 12th day of October, 2022.

Kayla Dye McClusky
United States Magistrate Judge